**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **G.T.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-914-ALM** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

G.T.C.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA"). (Doc. 1). The Commissioner filed the Administrative Record ("AR") (Doc. 7), and the parties have fully briefed the issues. (Docs. 14, 20, 21).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 10, 11). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] For privacy purposes in light of the sensitive information disclosed in Social Security cases, the Court refers to Plaintiff by initials only.

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant for social security benefits is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id.* "The claimant

[3] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

is entitled to disability benefits only if [the claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## II. Procedural History

Plaintiff filed applications for disability insurance benefits and supplemental security income, which were denied initially and on reconsideration. (AR, at 14). Two administrative hearings were held – one on May 15, 2024, (*id.* at 52-58), and another on

November 6, 2024, (*id*. at 34-51). The Administrative Law Judge ("ALJ") then issued a decision finding that Plaintiff was not disabled. (*Id*. at 14-28). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III. The Administrative Decision

Relevant to Plaintiff's claims, the ALJ found at Step Two of the analysis that Plaintiff had various severe physical and mental impairments. (AR, at 17). The ALJ found Plaintiff had the RFC to perform light work with additional limitations, including that he could "understand, remember, and carry out simple and detailed instructions and make related decisions." (*Id.* at 19-20). The RFC did not include an allowance for an assistive device. The ALJ then determined that Plaintiff could perform his past relevant work as a phlebotomist, both as defined in the Dictionary of Occupational Titles ("DOT") and as actually performed. (*Id.* at 27). Thus, the ALJ found Plaintiff was not disabled. (*Id.* at 28).

## IV. Claims Presented for Judicial Review

Plaintiff contends the ALJ committed reversible error: (1) by failing to resolve a conflict between the vocational expert's ("VE") testimony and the DOT; and (2) because the RFC was not supported by substantial evidence regarding Plaintiff's use of an assistive device. (Doc. 14, at 7-14). The Commissioner argues that Plaintiff has not demonstrated an assistive device was medically necessary and that there is no conflict between the VE's testimony and the DOT. (Doc. 20, at 4-12). The Court finds the ALJ did not err in

formulating the RFC and that there is no conflict between the DOT and the VE's testimony. Thus, the ALJ's decision is affirmed.

## V. The ALJ Did Not Err in Formulating the RFC With Regard to an Assistive Device.

Plaintiff contends the ALJ did not properly consider Plaintiff's need for an assistive device when formulating the RFC. The ALJ recognized Plaintiff's testimony that Plaintiff "had issues with walking and balance," that his symptoms limited his ability to stand and walk, and that he "initially used a walker to assist with ambulation and balance, but he then was able to move to a cane." (AR, at 20). However, the ALJ found Plaintiff's symptoms were not consistent with the medical and other evidence, (*id.*), and he did not include the use of an assistive device in the RFC. (*Id.* at 19-20). As shown below, the ALJ extensively considered the evidence of Plaintiff's use of an assistive device at times during the relevant period. The decision not to include a related limitation in the RFC was supported by substantial evidence and thus was not error.

Plaintiff presented to the emergency room on January 5, 2022, and was diagnosed with a stroke. (*Id.* at 959). He remained in this hospital until January 25, 2022. (*Id.*) Then he began inpatient rehabilitation. (*Id.* at 21). The ALJ's decision addressed the following medical records relating to an assistive device:

- February 7, 2022 – record memorializing Plaintiff's discharge from inpatient rehab, noting that Plaintiff had "good balance with some support and was using a walker or cane to ambulate" and "was discharged home with a . . . walker." (*Id.*) (citing *id.* at 697-99).

- February 21, 2022 – Plaintiff's neurologist noted that he "was using a cane for stability." (*Id.* at 21) (citing *id.* at 546).

- March 15, 2022 – an "examination showed normal strength in both upper and lower extremities but some lingering gait abnormalities." (*Id.* at 21-22) (citing *id.* at 536).

- May 9, 2022, and May 25, 2022 – physical therapy records noting that Plaintiff "was still struggling with balance and coordination when fatigued" and that he "was still limited with walking." (*Id.* at 22) (citing *id.* at 479, 493).

- May 23, 2022 – Plaintiff's neurologist noted that Plaintiff "advised his lower extremity weakness had significantly improved with therapy. (*Id.* at 21) (citing *id.* at 483).

- July 27, 2022 – Plaintiff reported "that he had no major struggles and was able to perform functional activities like carrying things up stairs." (*Id.* at 22) (citing *id.* at 451).

- October 19, 2022 – Plaintiff was discharged from physical therapy and the record notes that "it was remarked that [Plaintiff] was a bit unsteady with jumping tasks but noted that he was going golfing the following weekend and was hoping to work his way up to playing nine holes." (*Id.* at 22) (citing *id.* at 429). Further, the report noted Plaintiff had normal strength in his legs and had improved functional endurance. (*Id.* at 22) (citing *id.* at 431-32).

- December 28, 2022 – a consultative examination report stated that Plaintiff "was noted to walk with a right limp but had slow and steady gait and needed no assistive device." (*Id.* at 24) (citing *id.* at 1296).

- March 2, 2023 – a psychological consultative examination at which Plaintiff reported balance issue. (*Id.* at 25) (citing *id.* at 1305).

- August 8, 2023 – a record related to an emergency room visit for a bacterial infection, at which Plaintiff needed to use a rolling walker upon discharge. (*Id.* at 23) (citing *id.* at 1493).

- August 21, 2023 – a record from a return visit to the emergency room at which Plaintiff complained of pain in his right leg, but "was noted to walk out of the emergency room with a steady gait" at discharge. (*Id.* at 23-24) (citing *id.* at 1810, 1817).

- June 18, 2024 – a psychological consultative examination at which Plaintiff "reported that he was sometimes embarrassed to go out because he needed a cane

> to walk" and Plaintiff "was noted to walk somewhat slowly and with the assistance of a cane." (*Id.* at 25) (citing *id.* at 1851, 1852).

Addressing the state agency medical consultants' prior administrative findings, the ALJ found that "[o]verall, the treatment records showed that while the claimant had experienced a stroke, he underwent significant outpatient rehabilitation and at the time of discharge around October 2022, he was able to walk without difficulty." (*Id.* at 26).

Citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996), Plaintiff contends the RFC "must . . . be supported by a narrative discussion citing specific medical and non-medical evidence and describing how that evidence supports the conclusions reached therein." (Doc. 14, at 10). Further, he asserts that "an ALJ must . . . identify and explain how he or she resolved any material inconsistencies or ambiguities in the evidence when evaluating a claimant's RFC." (*Id.*) (citing SSR 96-8p, 1996 WL 374184, at *7). The Court finds that the ALJ did not run afoul of these provisions. In coming to this conclusion, the Court notes that an ALJ's explanation is "insufficient" when "it fails to link specific evidence to the ALJ's RFC" or requires the Court "to parse through the summarized evidence to find support for the ALJ's decision." *Peterson v. Saul*, 2020 WL 1911567, at *9 (D.N.M. Apr. 20, 2020). The Court is also guided by the principle that it "must exercise common sense . . . . [and] that [it] cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

While the ALJ did not explicitly state in the RFC that Plaintiff does not require an assistive device and contemporaneously explain the reasons why, the ALJ's discussion of the evidence specifically refers to the periods of time when Plaintiff used an assistive

device and also his varying abilities to walk throughout the entire relevant period. In discussing opinion evidence, the ALJ found that Plaintiff was able to walk without difficulty in October 2022 – at the time of his discharge from physical therapy after his January 2022 stroke. (AR, at 26). Thus, it is clear from a common sense reading of the decision as a whole that while Plaintiff required an assistive device for a period of time during and subsequent to his hospitalizations, he otherwise did not require the use of an assistive device. As the Commissioner argues, (Doc. 20, at 6-7), leaving a temporary limitation out of the RFC is permissible. *See* SSR 23-1p, 2023 WL 7300425 (Nov. 7, 2023) ("Because of the duration requirement, we will not include limitations in the RFC assessment that completely resolve, or that we expect to completely resolve, within 12 months.").

Although Plaintiff acknowledges "the primary justification for the ALJ's finding" was his ability to walk without difficulty after rehab, he argues that "only a very few of [the records cited by the ALJ] actually reflected [Plaintiff] to have an unimpaired walking capability" and that "numerous entries from those cited and other medical reports consistently reflected that [Plaintiff] required use of an assistive device for ambulation throughout the relevant period." (Doc. 14, at 11). Plaintiff then supports his position with the evidence of:

- An abnormal gait on January 7, 2022. (*Id.*) (citing AR, at 731-72, 739).
- The need for a rolling walker or wheelchair during his January and February 2022 hospitalization. (*Id.* at 11-12) (citing AR, at 571, 574-75, 592, 597, 601, 613, 619, 641-43, 651, 665-66, 671, 676, 742, 744, 749-50, 767, 841, 849, 869, 872-73, 882, 896- 97, 900, 909, 914-15, 918).

- Gait issues, fatigue, and instability on various occasions between March and October 2022. (*Id.* at 12) (citing AR, at 431, 443, 460, 465, 481, 493, 515, 518, 534, 536).

- Plaintiff had diminished sensation in his left leg and exhibited a limp with slow and steady walking in December 2022. (*Id.* at 12) (citing AR, at 1297-1298, 1300).

- Plaintiff's wide stance and holding out his hands to his sides to keep his balance in March 2023. (*Id.* at 12) (citing AR, at 1303).

- Records from August and September 2023 exhibiting poor leg weightbearing tolerance, antalgic gait, need for a rolling walker, and painful right leg mobility with degenerative changes. (*Id.* at 12-13) (citing AR, at 1375, 1389, 1412, 1418, 1420, 1423, 1433, 1451, 1462, 1466, 1469-70, 1473, 1481, 1486, 1494, 1593, 1780, 1784, 1814).

- A June 2024 reference to Plaintiff walking with a cane. (*Id.* at 13) (citing AR, at 1851).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal citation omitted). While the ALJ did not discuss every piece of evidence regarding Plaintiff's ability to walk and his use of an assistive device during his hospitalization and his rehabilitation, the ALJ addressed evidence regarding Plaintiff's abnormal gait and use of both a walker and cane during that time period. (AR, at 21-22). Similarly, the ALJ addressed the December 2022 record in which Plaintiff had decreased sensation in his left leg and walked with a slow and steady gait – also adding that Plaintiff needed no assistive device. (*Id.* at 24). And while the ALJ did not specifically address the abnormal way in

which Plaintiff walked at his March 2023 psychological consultative evaluation, the ALJ's discussion of that record included Plaintiff's balance issues. (*Id.* at 25). The ALJ also discussed records from August and September 2023 noting Plaintiff's use of a walker and leg pain in conjunction with his hospitalization and subsequent procedure for his leg wound. (*Id.* at 23-24). Additionally, the ALJ noted that Plaintiff used a cane in June 2024. (*Id.* at 25). In other words, the ALJ neither ignored nor rejected this evidence, but balanced it against other evidence indicating greater capability.

Because the ALJ adequately considered and addressed the medical evidence regarding Plaintiff's use of assistive devices and his ability to walk, the undersigned finds that Plaintiff's argument amounts to no more than a request to reweigh the evidence. The Court may not engage in such a practice. *See Vigil*, 805 F.3d at 1201.

**VI. There is No Conflict Between the VE's Testimony and the DOT.**

Plaintiff contends that the ALJ failed to explain how he resolved a conflict between the DOT and the VE's testimony. (Doc. 14, at 7-9). The VE testified that a hypothetical individual who could understand, remember, and carry out simple and detailed instructions and make related decisions could perform the phlebotomist job, which was semi-skilled work with a Specific Vocational Preparation ("SVP") of 3. (AR, at 48-49). Plaintiff contends this testimony conflicts with the DOT because the DOT listing for phlebotomist has a "Level 3" reasoning rating. DOT § 079.364-022, 1991 WL 646858. Level 3 reasoning requires an individual to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "deal with problems involving several concrete variables in or from standardized situations." *Id.*

The undersigned finds no case law indicating an actual conflict between a Level 3 reasoning rating and Plaintiff's retained ability to understand, remember, and carry out simple and detailed instructions. In *Thomas v. Sec'y of Health & Hum. Servs.*, 1994 WL 135224, at *4 (10th Cir. 1994), the Tenth Circuit found "no authority . . . providing that an inability to understand, remember, and carry out complex instructions is incompatible with a reasoning development of level three." (Emphasis added). In later decisions, the Tenth Circuit held that a limitation to simple and routine work tasks "seems inconsistent with the demands of level-three reasoning," *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (emphasis added), and a "limitation to understanding, remembering, and carrying out simple instructions" is inconsistent with the demands of Level 3 reasoning, *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (emphasis added). However, the court did not discuss the impact of the ability to follow detailed instructions.

In support of his position, Plaintiff cites *Parker v. Berryhill*, in which a consultative examining doctor found a claimant had mild limitations in understanding and remembering complex instructions and moderate limitations in carrying out complex instructions. *Parker v. Berryhill*, No. CIV-16-1191-F, 2017 WL 5197030, at *3 (W.D. Okla. Oct. 25, 2017), *adopted*, 2017 WL 5196617 (W.D. Okla. Nov. 9, 2017). The Magistrate Judge found that the ALJ erred by not including "in the RFC any limitation regarding Plaintiff's abilities with respect to complex (or other) instructions" when he gave the opinion "great weight." *Id.* Further, the Magistrate Judge found that the error was not harmless because "two of the three occupations cited by the ALJ require a reasoning level of three, which is generally understood to require the ability to carry out complex instructions." *Id.* But the

same Magistrate Judge later *sua sponte* distinguished *Parker*, noting that "the ability to perform detailed instructions is different than, and not on a continuum with, the ability to perform complex instructions." *Guy v. Berryhill*, No. CIV-16-1285-M, 2018 WL 1415911, at *3 n.6 (W.D. Okla. Feb. 26, 2018) (emphasis added), *adopted*, 2018 WL 1415628 (W.D. Okla. Mar. 21, 2018). So while a job with reasoning level of three may require the ability to carry out complex instructions, it does not mean that a person limited to detailed instructions cannot perform it.

The Court finds *Guy* is persuasive, as the ALJ in that matter found a claimant could "understand, remember, and carry out simple and detailed instructions" – the same limitations present in this case. *Id.* at *2. And the ALJ also found the claimant could perform a job like the phlebotomist job here, with a semi-skilled SVP of 3 and a reasoning level of 3. *Id.* at *2-3. The Magistrate Judge noted that "semiskilled work, by definition, requires 'some skills but does not require doing the more complex work duties'—as opposed to skilled work, which expressly involves 'complex instructions.'" *Id.* at *3 (quoting 20 C.F.R. § 404.1568(b); Soc. Sec. Admin., *Program Operations Manual System* ("POMS"), ch. DI, subchapter 25001.001(A)(75)). The Magistrate Judge then found that "in light of the skill level and SVP listed by the *DOT* . . . there is no apparent conflict between the *DOT*'s instruction-related requirements for that occupation and the VE's testimony that a candidate who can 'understand, remember, and carry out simple *and detailed* instructions' is able to perform that work." *Id.*

For the reasons stated above, the ALJ did not err in his consideration of the VE's testimony.

## VII. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the Court **AFFIRMS** the Commissioner's decision.

**IT IS SO ORDERED** this 28th day of September, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE